UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

KEVIN BOYD                                    CIVIL ACTION NO. 11-cv-2097

VERSUS                                        JUDGE HICKS

ROGER SMITH, ET AL                            MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Kevin Boyd ("Plaintiff") alleges that a Homer policeman used a Taser on him multiple times while Plaintiff was handcuffed and there was no justification for the use of force. Plaintiff named as defendants the officer who used the Taser on him, a supervisory officer who allegedly stood by and did nothing, and the Town of Homer.  The three defendants have filed a Motion for Summary Judgment (Doc. 54) that attacks all of Plaintiff's federal claims. For the reasons that follow, it is recommended the motion be denied.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a).  A fact is "material" if it might affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986).  A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for

either party.  Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The court will consider all of the evidence in the record but must "refrain from making credibility determinations or weighing the evidence."  Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007).  All reasonable inferences must be drawn in favor of the party opposing the motion.  Martin v. Spring Break '83 Productions, L.L.C., 688 F.3d 247 (5th Cir. 2012).

**Qualified Immunity Defense**

The two police officers also assert qualified immunity, which "protects public officials from suit unless their conduct violates a clearly established constitutional right."  Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003).  It is an affirmative defense, but the burden is on a plaintiff to negate the defense once it has been properly raised.  Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008).  To overcome an officer's qualified immunity defense, a plaintiff must show that the evidence, viewed in the light most favorable to him, is sufficient to establish a genuine dispute "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2080 (2011); Cutler v. Stephen F. Austin State University, ___ F.3d ___, 2014 WL 4548549, *4 (5th Cir. 2014).

**The Claims Against McDaniel and Smith**

## A. Undisputed Facts

Plaintiff did not advance past the eighth grade and survives on social security disability benefits, supplemented by income from shoplifting and an occasional odd job such as washing a car or yard work. He has multiple arrests and convictions in several north Louisiana parishes related to shoplifting, theft, and other crimes. He is well known to the Homer police, including Sgt. Elvan McDaniel, who was in a Fred's Dollar Store when a store clerk alerted him that Plaintiff was attempting to shoplift items.

Plaintiff fled the store into a nearby wooded area. McDaniel gave chase, but he lost sight of Plaintiff and quit looking after he encountered a water moccasin. McDaniel applied for and obtained arrest warrants for Plaintiff for theft and resisting an officer. About a month passed before McDaniel again saw Plaintiff, who was walking down the street. Plaintiff also saw McDaniel, and he admits that he hid behind a house and then ran from the officer.

Lt. Roger Smith, the other defendant officer, joined McDaniel in searching the area. Plaintiff saw the officers and started running through a wooded area. McDaniel got in his car and parked on the shoulder of the highway in an area where he thought Plaintiff might emerge. Smith approached the area where Plaintiff was seen heading. Smith and Plaintiff soon made eye contact, and Plaintiff ran into an overgrown area. The facts are not in significant dispute to this point, but the testimony from Plaintiff and the officers differs tremendously about how the next events unfolded.

### B. Plaintiff's Evidence

Plaintiff testified at his deposition that he tried to go through bushes in the overgrown area but could not push through because there were too many stickers.  Lt. Smith then pulled a gun on Plaintiff and told him to get down, which Plaintiff did.  Plaintiff said that Smith handcuffed him and radioed Sgt. McDaniel.  Smith then searched Plaintiff and confiscated from him a pocket knife, crack pipe, and a lighter.

Plaintiff testified that Sgt. McDaniel arrived within two or three minutes and approached Plaintiff, who was standing with his hands cuffed behind his back.  McDaniel told Plaintiff to walk to his police car, and Plaintiff began to do so, with Lt. Smith nearby. Plaintiff then felt something (the Taser prongs) hit him in his back and his arm and began "shaking, shaking, shaking."  Plaintiff went to the ground, and McDaniel told him, "Get up." Plaintiff stood up and McDaniel "kept on tasing me, tasing me, tasing me."  Plaintiff said that he "lost it" and could not say for sure how many times McDaniel used the Taser on him, but, "Every time I got up, he put the juice to me."

Plaintiff testified that he was "flopping like a fish" and "hurting so bad."  He said to McDaniel, "Why you doing me like this?  I ain't resisting."  He begged, "In the name of Jesus, quit tasing me."  Plaintiff estimated that McDaniel used the Taser on him "over three" times.  At the end, McDaniel looked at Lt. Smith, then back at Plaintiff and acted as if he was going to trigger the Taser again, and Plaintiff yelled.  McDaniel then told Smith, who was right beside him during the entire incident, "I've got to charge my Taser up again, because I used all the juice on him."  Plaintiff said that the incident caused him to lose control of his

bodily functions so that he urinated and defecated on himself, and he continued to experience pain and issues with his nerves and an irregular heartbeat while he was in jail.  Plaintiff said his "body shook for about three or four days."

Plaintiff handwrote and signed a statement at the police station in which he admitted he stole Five Degrees deodorant from the Fred's store and ran when he saw Sgt. McDaniel enter the store.  He told police at the station that he had smoked crack on the day of the arrest, but he testified in his deposition that he had not.  He later pleaded guilty to charges of theft and possession of drug paraphernalia.

Franklin Evans, a former Homer police officer who worked with McDaniel and Smith, testified in an affidavit that in late August or early September 2011 (a few weeks after the July 24 incident), he was in the patrolman's room at the police station and was able to hear Smith and McDaniel talking in the nearby main office.  Evans testifies that the officers' voices were clear, and they were laughing and joking about Plaintiff.  McDaniel said that he had arrived at the scene, saw Plaintiff on the ground, used the Taser on him, and said, "Run now, bitch."  McDaniel also said that he was "pissed" that Plaintiff had run from him at the Fred's store.  Evans added that it appeared from the context of the conversation that Lt. Smith had himself seen McDaniel use the Taser on Plaintiff.  Defendants object to some of Evans' testimony on the grounds that it is hearsay or otherwise inadmissible, but they have not offered any particular objection to these aspects of his testimony that are found in paragraph five of his affidavit.  They also object that Evans resigned in lieu of being fired

after sexual content was found on his work computer, and they believe his testimony was provided in this case in retaliation.

### C. The Officers' Evidence

Lt. Roger Smith testified at his deposition that he chased Plaintiff into the bushy area. Plaintiff fell about 20 yards into the woods.  Smith got on top of Plaintiff, grabbed his arm, and told him to roll over.  Plaintiff "was cooperative with me as of that point."

Smith said he was able to handcuff Plaintiff, but he did not search Plaintiff because he was exhausted given the approximately 100-degree heat and the lack of air conditioning in his patrol car.  He walked Plaintiff back to the police car, sat Plaintiff down beside the car, and then sat down beside him to rest and catch his breath.  Lt. Smith leaned into his car to use the radio to alert Sgt. McDaniel that Plaintiff was in custody.  Smith said that when McDaniel arrived soon afterward, he asked McDaniel to watch Plaintiff while Smith went back in the woods to find a radio that had fallen from his pocket during the chase.

Smith said he was still in the woods, and could not see the two men, when he heard McDaniel give the command, "Taser, Taser, Taser."  He then heard the Taser go off.  That command, which is used to alert other officers and nearby persons that a Taser rather than a firearm is about to be fired, is usually preceded  by a command such as, "Stop or I'll use the Taser on you."  Smith did not hear McDaniel give such a command.

Sgt. McDaniel testified that when he arrived at the scene of the arrest Lt. Smith was on his hands and knees and trying to catch his breath.  Smith said that he "lost his shit in the woods" and needed to go look for it.  McDaniel noticed that Smith had no pistol belt or other

equipment on him, so he assumed Smith lost his entire equipment belt (including handcuffs) in the woods.  McDaniel assumed that he would have to handcuff and secure Plaintiff.

McDaniel testified that he soon saw Plaintiff reaching into his right front pocket.  He thinks he told Plaintiff to stop, but the next thing he knew Plaintiff had a black and silver knife in his hand.  McDaniel testified that he did not see handcuffs on Plaintiff or realize that Plaintiff was handcuffed behind his back.  McDaniel said Plaintiff was a "little skinny, wiry guy" who was somehow able to contort his body to get the knife from his front pocket even while cuffed behind his back.  He said that Plaintiff also managed to open the folding knife. McDaniel testified that he thinks he yelled for Plaintiff to stop, and his next commands were, "Taser, Taser, Taser."  The Taser probes struck Plaintiff in his shoulder and back, and he began rolling around.  McDaniel said that is when he first saw that Plaintiff was handcuffed.

Lt. Smith testified that when he returned to the area he saw Plaintiff seated and leaning over on his right side. McDaniel had the Taser in his hand, and the leads were extended.  McDaniel told Smith that Plaintiff had a knife, which Smith saw on the ground. Smith did not recall if the blade was extended.  McDaniel did not at first recall in his deposition whether the blade was extended, but a reference to the blade in one of his written reports led to his testimony that it was extended.  Smith said that Plaintiff was then searched for the first time, which revealed the crack pipe and lighter.  Both officers denied seeing or smelling any indication that Plaintiff had wet or soiled himself.

**D. Analysis**

When an person who has been arrested asserts that officers used excessive force in violation of the Fourth Amendment, the question is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances.  Graham v. Connor, 109 S.Ct. 1865 (1989).  To overcome an officer's claim of qualified immunity, a plaintiff must show "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."  Ontiveros v. City of Rosenberg, 564 F.3d 379, 382 (5th Cir. 2009).

Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 109 S.Ct. at 1872.  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  Id.

There are obviously genuine disputes within the evidence submitted by the parties. Sgt. McDaniel testifies that Plaintiff was, despite being handcuffed behind his back, able to retrieve a knife from his front pocket, open the blade, and extend it toward McDaniel without the officer even noticing that Plaintiff was handcuffed.  McDaniel testified that he employed his Taser once in what he believed to be a necessary use of force to subdue the armed arrestee.  Lt. Smith testifies that he did not see the use of the Taser, but he offers testimony that generally corroborates McDaniel's testimony.  On the other hand, Plaintiff testifies that


Lt. Smith had searched him and taken his pocket knife and other items before McDaniel arrived at the scene.  Plaintiff states that McDaniel used the Taser on him, for no valid reason, as Plaintiff was walking toward the patrol car to be taken to jail.  McDaniel, in the presence of Smith, then repeatedly ordered Plaintiff to get up, after which he would again use the Taser on Plaintiff for no legitimate reason.

The court may not assess the credibility of witnesses or weigh the competing evidence when deciding a summary judgment motion.  Kitchen v. Dallas County, 759 F.3d 468, 477-78 (5th Cir. 2014) (prisoner affidavits in excessive force case conflicted with officers' deposition testimony; summary judgment for officers reversed).  Any conflicts in the competing evidence must be resolved in favor of the non-movant, which is Plaintiff.  The testimony offered by him, which must control for current purposes, depicts Sgt. McDaniel engaging in the multiple, malicious uses of a Taser on a handcuffed man when there was no legitimate need, and which resulted in extraordinary pain and lingering physical difficulties for Plaintiff.  The facts presented by Plaintiff are plainly sufficient to establish a Fourth Amendment claim against McDaniel and defeat his assertion of qualified immunity because any reasonable official would know that such actions were unlawful given the clearly established law at the time of the incident.

Lt. Smith is also ineligible for summary judgment despite his lack of direct involvement in the use of the Taser.  Bystander liability of an officer may be established where he "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Kitchen,

759 F.3d at 480.  This law has been clearly established for many years.  See Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995).

Plaintiff testifies that Lt. Smith stood nearby as Sgt. McDaniel repeatedly used the Taser on him for no reason, but Smith, who held superior rank, did not do or say anything in an attempt to get the subordinate officer to stop the use of force.  That evidence is sufficient to create a genuine dispute of material fact regarding Smith's acquiescence in the alleged use of excessive force.

### E. Documentary Evidence

The officers argue that the court may completely disregard Plaintiff's testimony because it is overcome by "documentary evidence" in the form of logs from the Taser devices owned by the Homer Police Department.  Data from the unit that McDaniel says he used shows that it was deployed once in a five-second interval on July 24, 2011 at 5:26:13 p.m. without a video camera.  But other logs show that the same Taser device was deployed again, with a video camera, at 5:26:03 p.m.  The video from that sequence was only a few seconds long and appeared to have been taken inside the police station, where an officer was apparently testing or playing with the device.

The officers invoke Scott v. Harris, 127 S.Ct. 1769 (2007) in which the plaintiff in a police chase case testified that he was driving quite safely, not a threat to pedestrians or other drivers, and slowed for turns and intersections.  A video told a different story and clearly depicted the plaintiff's car racing down narrow roads in the dead of night at shockingly fast speeds, swerving around more than a dozen cars, forcing cars off the road, running multiple

red lights, and otherwise driving dangerously.  The Court acknowledged that facts must be viewed in the light most favorable to the non-moving party if there is a genuine dispute as to those facts, but it held that there was no genuine dispute when the story told by the plaintiff was "blatantly contradicted by the record, so that no reasonable jury could believe it."  Scott, 127 S.Ct. at 1776.

The Fifth Circuit has cited Scott and held that, even at the summary judgment stage, "facts evident from video recordings taken at the scene" may overcome a plaintiff's description of the facts.  Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011).  But even video evidence is not a source of uncontroverted fact if "[t]he contents of the video are too uncertain to discount [the plaintiff's] version of the events under Scott."  Chacon v. Copeland, ___ Fed. Appx. ___, 2014 WL 3894270, quoting Ramirez v. Martinez, 716 F.3d 369, 374 (5th Cir. 2013).  The officers have not cited any authority where the Court has extended that rule from video evidence so that data logs or other such "documentary" evidence permit summary judgment despite clear and conflicting testimony from a witness.

McDaniel and Smith do not offer any video evidence that blatantly contradicts Plaintiff's testimony or supports their own.  They have no video or audio evidence of the incident.  They have only their testimony and the Taser logs, about which there was considerable confusion in the depositions.  It was admitted that the data could be corrupted, there was no login system to determine with certainty which device Sgt. McDaniel selected that day, there was confusion about which time keeping system was used on the logs, an expert admitted that it was difficult but not impossible to manipulate the data, and Sgt.

McDaniel admitted that he did not pick up any of the microdots ejected from the Taser when it was fired.  Those microdots have numbers that link them to the device that was used so that a log from that device can more certainly be determined to be the one that is relevant.  The time the Taser was logged as being fired was also in potential conflict, depending on the time zone reflected in the log, with the time of the arrest as noted in a police dispatcher log.

Just as the videos in <u>Chacon</u> and <u>Ramirez</u> were not sufficiently clear to blatantly contradict the plaintiff's version of events, the Taser logs in this case are inadequate. Furthermore, even the one use of the Taser suggested by the logs could have been excessive force under the circumstances described by Plaintiff where he was handcuffed, unarmed, and merely walking to a police car to be taken to jail.

**Town of Homer**

Plaintiff alleged in his amended complaint that the Town of Homer was liable (1) for failing to train Sgt. McDaniel in the proper use of the Taser and (2) because its chief of police has on several occasions become aware of civil rights violations committed by McDaniel, including the use of excessive force, but did not properly discipline, retrain, or otherwise attempt to correct McDaniel's conduct as an officer.

The Town argued in its motion that complaints may have been made against McDaniel but nothing to the magnitude that required discipline, that McDaniel was certified as a Taser instructor after this incident, and there was insufficient evidence that the Town had not properly supervised him.

Plaintiff responded to the motion by arguing that the Town of Homer was liable under the theory that it ratified or acquiesced to the acts of McDaniel.  See Grandstaff v. City of Borger, 767 F.2d 161, 169 (5th Cir. 1985) (city may be liable where police officers know that their use of force in disregard of the rights and safety will meet with the approval of chief of police).  The theory is available only in  extreme factual situations.  Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 848 (5th Cir.2009).

Plaintiff pointed to his assertions that the chief has on several occasions become aware of civil rights violations committed by McDaniel, including the use of excessive force, but did not attempt to correct McDaniel's misconduct.  He also pointed to evidence that the chief has never used the "use of force" response report or the "use of Taser" response report called for by the police department's own manual.  The chief testified that neither he nor the Town's police department regularly review uses of force, despite a requirement by the manual.

Plaintiff also submitted the affidavit of former Homer police officer Franklin Evans who testified that he consulted the chief after Evans received a call from an FBI agent.  According to Evans, the chief said the agent was probably calling to ask about the Boyd (Plaintiff) tasing.  The chief told Evans that if the FBI questioned him, Evans was to say that Sgt. McDaniel saw Lt. Smith struggling with Boyd and Boyd pulled something from his pocket, which was why McDaniel used a Taser on Boyd.  Evans said he responded that the version was not how McDaniel and Smith described the incident.  But the chief "instructed Evans to say what he just said and that's how the report reads."  The Town objects that

Evans' testimony regarding what the chief said is hearsay, but a statement is not hearsay if it is offered against an opposing party and was made by the party's agent or employee on a matter within the scope of that relationship and while it existed.  F.R.E. 801(d)(2)(D).  The chief's statements appear to fall within that description.

The Town of Homer filed a reply.  It did not challenge the ratification theory on the merits, but it did argue that the theory was not adequately alleged in Plaintiff's original or amended complaint to be considered.  A complaint need only recite a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. Pro. 8(a)(2).  The plaintiff's pleadings need only give the defendant fair notice of what the claim is and the grounds upon which it rests.  Gen. Elec. Corp. v. Posey, 415 F.3d 391, 396 (5th Cir. 2005).  The notice pleading requirements do not require an inordinate amount of detail or precision, and the complaint "need not correctly specify the legal theory giving rise to the claim for relief."  McManus v. Fleetwood Enters., Inc. 320 F.3d 545, 551 (5th Cir. 2003).

Plaintiff's complaint alleged that the chief of police knew on several occasions before this incident that McDaniel had committed civil rights violations, including the use of excessive force, but failed to attempt to correct the deficiencies in McDaniel's conduct.  The court finds that the allegation is sufficient to have put the Town on reasonable notice of the municipal liability theory that Plaintiff advocated in his memorandum in opposition.  Plaintiff conceded in his memorandum that he "has no other basis for asserting municipal liability."  The Town has not squarely attacked, either factually or legally, the ratification theory of municipal liability asserted by Plaintiff, so it is not entitled to summary judgment.

**Fourteenth Amendment; State Law Claims**

Plaintiff alleged in his amended complaint that he asserted claims pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the Constitution.  In the body of the complaint, he alleged that the excessive use of force violated the Fourth Amendment. Defendants argue that the Fourth, but not the Fourteenth Amendment or any notion of substantive due process, is the proper framework for Plaintiff's claims.

Plaintiff did not contest this argument in his opposition.  He, as did the defendants, discussed the claims under the Fourth Amendment standards discussed in Graham.  It appears that Plaintiff referred to the Fourteenth Amendment in the introduction to his amended complaint because it is the Fourteenth Amendment that makes the Fourth Amendment applicable to the states.  There is no indication that Plaintiff has attempted to assert a separate substantive due process claim, so no further discussion is necessary.

Plaintiff's amended complaint included a count which alleged that same actions that constituted excessive force under the Fourth Amendment also violated Louisiana Civil Code and Constitution.  Defendants dedicate a portion of their motion to the state law claims, but only to say that the court would be divested of subject-matter jurisdiction if it found no federal violation.  That is not quite correct, as the court would have supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.  In any event, the federal claims continue, so this argument is moot.

Accordingly,

**IT IS RECOMMENDED** that the Defendants' **Motion for Summary Judgment (Doc. 54)** be **denied**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 1st day of October, 2014.

Mark L. Hornsby
U.S. Magistrate Judge